# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

MARQUISE LELAND WHITE,      )
            )
         **Petitioner,**      )
            )
vs.             )      **Case No. 11-CV-291-GKF-TLW**
            )
ROBERT PATTON, Director,[1]      )
            )
         **Respondent.**      )

## OPINION AND ORDER

Before the Court is the amended petition for writ of habeas corpus (Dkt. # 12) filed by Petitioner, a state prisoner represented by counsel. Respondent filed a response (Dkt. # 16) and provided the state court record necessary for resolution of Petitioner's claims (Dkt. ## 18, 19). Petitioner filed a reply (Dkt. # 20). For the reasons discussed below, the amended petition for writ of habeas corpus is denied. The original petition (Dkt. # 1) shall be declared moot.

## *BACKGROUND*

During the early morning hours of January 7, 2006, police discovered the body of Modesta Ramirez-Alvarez (Ramirez) at the bottom of a creek bed located just north of the Riverchase Apartments in Tulsa, Oklahoma. She had sustained multiple head injuries. On January 8, 2006, seventeen-year-old Marquise Leland White (Petitioner) and his sixteen-year-old cousin, Jhirimi McClendon (McClendon), were taken into custody and interviewed separately by homicide detectives.

---

[1]Petitioner is in custody at Lawton Correctional Facility, a private prison in Oklahoma. Under Rule 2, Rules Governing Section 2254 Cases, the proper respondent is Robert Patton, Director of the Oklahoma Department of Corrections. Therefore, Robert Patton, Director, is substituted in place of David C. Miller, Warden, as party respondent. The Clerk shall note the substitution on the record.

Before asking any questions, Detectives read Petitioner his rights under Miranda.[2] Petitioner

signed a Notification of Rights Waiver and agreed to talk to the detectives.  His interview lasted 2

hours, 20 minutes.   Detectives audiotaped the last 20 minutes of Petitioner's interview to

memorialize Petitioner's confession.  Petitioner admitted that during the evening of January 6, 2006,

he encountered Ramirez in the laundry room of the Riverchase Apartments where he lived with his

sister, Takisha White.  Petitioner said that he maced Ramirez and grabbed her car keys and cell

phone.  He put her in the front seat of her car, a gold or tan colored Honda Accord, and then he

drove the car to a nearby park.  Petitioner used Ramirez's cell phone to call his brother, Waitki

Crawford (Crawford).  Petitioner told Crawford he needed a ride and asked Crawford to come get

him.  He then drove Ramirez's car back to the apartments where he parked in a field beside an

adjacent creek.  He walked with Ramirez down the creek bank.  He told her to lie down at the

bottom of the creek and then kicked and rolled rocks onto the upper part of her body.  Petitioner then

drove Ramirez's Honda Accord back to the apartment complex parking lot.  He got out of Ramirez's

car and encountered Crawford who had arrived to give Petitioner a ride.  As Petitioner returned to

the Honda Accord, Crawford asked him where he got the car.  Petitioner told Crawford he had stolen

it.  Petitioner drove Ramirez's car to both his girlfriend's house and the apartment of his cousin,

McClendon.  Petitioner admitted that, after he picked up McClendon, he took McClendon to see

Ramirez's body.

During his interview, McClendon told detectives, after being advised of his rights under

Miranda, that Petitioner arrived at his apartment late at night on January 6, 2006.  Petitioner was

wearing black and red gloves and driving a gold Honda Accord that he said he had stolen from a

---

[2]Miranda v. Arizona, 384 U.S. 436 (1966).

woman at the Riverchase Apartments. Petitioner told McClendon he had maced the woman in the apartment complex's laundry room and forced her into her car. Petitioner said he drove the car to a field behind the apartments, forced the woman out of the car, then "tapped" her a couple of times with a sledgehammer and threw her down the riverbank. Petitioner took McClendon to see the body. Petitioner and McClendon returned to the car, then drove around the apartment complex. They parked the car in the field near the creek and "took off running" after another car approached with its headlights shining on them. Detectives audiotaped McClendon's interview and photographed the soles of McClendon's shoes.

Police also interviewed Crawford. Crawford said that during the evening hours of January 6, 2006, he received several phone calls from a number he did not recognize. He did not answer the first two calls, but answered the third call. It was Petitioner. Crawford said that, during the phone call, Petitioner kept being interrupted and he heard Petitioner say "sit on your hands before I kill you." Crawford also heard a slight whimper in the background. Crawford drove to the Riverchase Apartments where he encountered Petitioner in the parking lot. Petitioner told him "I think I just killed somebody." Petitioner then got into a Honda Accord and drove off. While at the detective division, police photographed the soles of Crawford's shoes.

On January 7, 2006, police processed evidence at the murder scene. They recovered bloody rocks and took photographs of distinctive footprints found on a sandy ledge located about twelve (12) feet from the body. On January 8, 2006, after obtaining a search warrant, police searched Petitioner's apartment. They recovered numerous items of interest, including a mace cannister, a pair of black and red gloves, two BB guns, a hammer, and a pair of black shoes. The soles of the shoes recovered from Petitioner's apartment matched the majority of the footprints found on the

sandy ledge near Ramirez's body. A few of the footprints matched the sole of McClendon's shoes. None of the footprints matched Crawford's shoes.

Petitioner was charged in Tulsa County District Court, Case No. CF-2006-240, with Murder - First Degree (Count 1), Kidnaping (Count 2), and First Degree Robbery (Count 3). A jury found Petitioner guilty as charged and recommended sentences of life imprisonment and a $10,000 fine (Count 1), ten (10) years imprisonment and a $10,000 fine (Count 2), and ten (10) years imprisonment and a $10,000 fine (Count 3). On April 1, 2008, the trial court sentenced Petitioner in accordance with the jury's recommendations as to Counts 1 and 2, but modified the term of imprisonment on Count 3 to five (5) years, and ordered the sentences to be served consecutively. Attorney G. Donald Haslam, Jr., represented Petitioner at trial.

Petitioner, represented by attorney Jamie D. Pybas, perfected an appeal to the Oklahoma Court of Criminal Appeals (OCCA). (Dkt. # 16-1). He raised the following propositions of error:

Proposition I: Mr. White's confession to police was introduced in violation of his constitutional rights under the Fifth and Fourteenth Amendments to the United States Constitution and Article II, §§ 7, 20, and 21 of the Oklahoma Constitution.

Proposition II: The trial court denied Mr. White the opportunity to present a defense by excluding expert testimony regarding false confessions in violation of the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Article II, §§ 7 and 20 of the Oklahoma Constitution.

Proposition III: Waitki Crawford's confession[3] to the homicide of Modesta Ramirez-Alvarez was admissible as a prior inconsistent statement both for impeachment purposes and substantively as exculpatory evidence of an alternate suspect, thus the trial court's exclusion of this confession

[3]As discussed in Part B(3) herein, Petitioner's uncle, Dana Terrill White, testified, outside the presence of the jury, that Crawford had confessed to him, during the course of Petitioner's trial, that he, Crawford, had killed Ramirez.

violated Mr. White's rights to compulsory process and to present a defense under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Article II, §§ 7, 20, and 21 of the Oklahoma Constitution.

> A.  Extrinsic evidence of Waitki Crawford's confession was admissible as impeachment evidence.
> B.  Extrinsic evidence of Waitki Crawford's confession was admissible as substantive evidence.

Proposition IV:   The trial court abused its discretion in admitting Jhirimi McClendon's alleged prior consistent statement where the foundational requirements had not been met, and this hearsay evidence improperly bolstered McClendon's testimony in violation of Mr. White's rights to a fair trial and due process under the Fourteenth Amendment to the United States Constitution and Article II, §§ 7 and 20 of the Oklahoma Constitution.

Proposition V:    The accumulation of error in this case deprived Mr. White of due process of law and necessitates reversal pursuant to the Fourteenth Amendment to the United States Constitution and Article II, § 7 of the Oklahoma Constitution.

Id.  In an unpublished Summary Opinion, filed June 9, 2010, in Case No. F-2008-325, the OCCA affirmed the Judgment and Sentence of the state district court.  (Dkt. # 16-4).

On May 12, 2011, Petitioner filed his petition for writ of habeas corpus (Dkt. # 1).  In an Order dated August 22, 2011, the Court determined the petition was a "mixed petition" and ordered Petitioner to file an amended habeas petition to delete the unexhausted claims or risk dismissal of the petition.  (Dkt. # 11).  On August 23, 2011, Petitioner filed an amended petition.  (Dkt. # 12). In the amended petition, Petitioner raises five (5) grounds for relief, as follows:

Ground I:     Mr. White's confession was obtained by force and duress and was false.  The admission of this false confession at the trial denied Mr. White a fundamentally fair trial.

Ground II:    The trial court's exclusion of the expert testimony of Dr. Shawn Roberson regarding this false confession issue unconstitutionally denied this Defendant Marquis L. White the opportunity to present a meaningful defense.

5

Ground III:    The witness Wataki [sic] Crawford told his uncle Dana Terrill White that he had committed the killing but denied, at trial, that he made this admission. The trial court denied Mr. White the right to put Dana White on to testify to this statement made by the witness Crawford thus denying Mr. White the ability to impeach the witness Crawford and to place in evidence exculpatory evidence of the perpetration of the crime by another individual. The trial court's exclusion of this essential evidence violated his constitutional rights to a fundamentally fair trial.

Ground IV:    The trial court admitted a prior consistent statement of the Witness Jhirimi McClendon over the hearsay objection of defense counsel thus bolstering McClendon's testimony in violation of Mr. White's fundamental rights to a fair trial and due process under the Fourteenth Amendment to the United States Constitution and Article II, §§ 7 and 20 of the Oklahoma Constitution.

Ground V:    The combined effect of the errors stated in Grounds One (1) through Four (4) served to deprive Mr. White of a fundamentally fair trial.

Id. Respondent argues that the OCCA's direct appeal adjudication of these claims was not contrary to, or an unreasonable application of, federal law as determined by the Supreme Court. (Dkt. # 16).

*ANALYSIS*

**A.     Exhaustion/Evidentiary hearing**

As an initial matter, the Court must determine whether Petitioner meets the exhaustion requirements of 28 U.S.C. § 2254(b). See Rose v. Lundy, 455 U.S. 509, 510 (1982). Petitioner fairly presented his habeas claims to the OCCA on direct appeal. Therefore, he has exhausted his state court remedies. In addition, Petitioner has not met his burden of proving entitlement to an evidentiary hearing. See Williams v. Taylor, 529 U.S. 420 (2000); Miller v. Champion, 161 F.3d 1249 (10th Cir. 1998).

**B.     Claims adjudicated by the OCCA**

The Antiterrorism and Effective Death Penalty Act (AEDPA) provides the standard to be applied by federal courts reviewing constitutional claims brought by prisoners challenging state convictions. Under the AEDPA, when a state court has adjudicated a claim, a petitioner may obtain federal habeas relief only if the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." See 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 386 (2000); Neill v. Gibson, 278 F.3d 1044, 1050-51 (10th Cir. 2001). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the Supreme Court's] decisions." White v. Woodall, 134 S. Ct. 1697, 1702 (2014) (citations omitted).

When a state court applies the correct federal law to deny relief, a federal habeas court may consider only whether the state court applied the federal law in an objectively reasonable manner. See Bell v. Cone, 535 U.S. 685, 699 (2002); Hooper v. Mullin, 314 F.3d 1162, 1169 (10th Cir. 2002). An unreasonable application by the state courts is "not merely wrong; even 'clear error' will not suffice." White, 134 S. Ct. at 1702 (citing Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003)). The petitioner "'must show that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" Id. (quoting Harrington v. Richter, 131 S. Ct. 770, 786-87 (2011); see also Metrish v. Lancaster, 133 S. Ct. 1781, 1787 (2013)).

"When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Richter, 131 S. Ct. at 784-85.

Section 2254(d) bars relitigation of claims adjudicated on the merits in state courts and federal courts review these claims under the deferential standard of § 2254(d).  Id. at 784; Schriro v. Landrigan, 550 U.S. 465, 474 (2007).  Here, the OCCA adjudicated Petitioner's claims on direct appeal. Therefore, the claims will be analyzed under the standards of § 2254(d).

As a preliminary matter, the Court notes that, in general, a federal habeas court has no authority to review a state court's interpretation or application of its own state laws.  Estelle v. McGuire, 502 U.S. 62, 67–68 (1991) (emphasizing that it is not the province of a federal habeas court to reexamine state court determinations on state law questions).  When conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.  Id. at 68 (citing 28 U.S.C. § 2241; Rose v. Hodges, 423 U.S. 19, 21 (1975)).  Therefore, the Court lacks authority to review Petitioner's claims that his convictions violate the Oklahoma Constitution.

### 1.    Admission of Petitioner's confession (Ground I)

In Ground I, Petitioner argues he was denied a fundamentally fair trial when the trial court allowed admission of his tape-recorded confession.  See Dkt. # 12 at 4.  He claims the confession was obtained by force and duress and that, as a result, it was involuntary and should have been suppressed.  The record reflects that the trial court held an extensive Jackson v. Denno[4] hearing to determine the voluntariness of Petitioner's confession.  See Dkt. # 18-13, Tr. Vol. I at 5-252; Dkt. # 18-14, Tr. Vol. II at 253-338.  At the conclusion of the hearing, the trial judge determined that the confession was voluntary.  See Dkt. # 18-14, Tr. Vol. II at 331.  On direct appeal, the OCCA ruled

---

[4]Jackson v. Denno, 378 U.S. 368, 376 (1964) ("A defendant objecting to the admission of a confession is entitled to a fair hearing in which both the underlying factual issues and the voluntariness of his confession are actually and reliably determined.").

that "[t]he trial court's decision finding White's confession voluntary is 'supported by competent evidence.'" See Dkt. # 16-4 at 2 (quoting Davis v. State, 103 P.3d 70, 80 (Okla. Crim. App. 2004)). The OCCA explained its ruling, as follows:

> At the *Jackson v. Denno* hearing, the State admitted a notification of rights form signed by White with the date and time indicating White understood his rights and waived them prior to questioning. The three detectives involved in the interview and the officer who transported White to the police station testified that no improper or coercive actions were used to obtain White's confession. The officers gave a consistent account about the interrogation refuting White's allegations of mental and physical abuse. Furthermore, the officers gave a reasonable and consistent explanation about the decision to record only the confession portion of the interrogation rebutting White's claim that the officers only recorded that portion to hide the use of improper tactics. Based on the evidence presented, the trial court did not abuse its discretion in holding White's confession was voluntary and admitting it into evidence.

Id. at 2-3.

The ultimate test of the voluntariness of a confession is whether it is the product of an essentially free and unconstrained choice by its maker. See Malloy v. Hogan, 378 U.S. 1, 7 (1964). A confession is involuntary or coerced if the "totality of the circumstances" demonstrates that the confessor did not freely decide to give the statement. Arizona v. Fulminante, 499 U.S. 279, 285-86 (1991). Under the totality of the circumstances approach, both the characteristics of the accused and the details of the interrogation are considered. Schneckloth v. Bustamonte, 412 U.S. 218, 226 (1973). Furthermore, the Fifth Amendment provides that no person shall be compelled in any criminal case to be a witness against himself. In Miranda v. Arizona, 384 U.S. 436 (1966), the Supreme Court concluded that, "without proper safeguards the process of in-custody interrogation of persons suspected or accused of crime contains inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely." Id. at 467. The Court admonished that "any evidence that the accused was threatened,

tricked, or cajoled into a waiver will, of course, show that the defendant did not voluntarily waive his privilege." Id. at 476.

It is well settled that the Miranda warning is a constitutional requirement adopted to reduce the risk of a coerced confession and to implement Fifth Amendment protections. Dickerson v. United States, 530 U.S. 428, 444 (2000). In Berkemer v. McCarty, 468 U.S. 420 (1984), the Supreme Court explained that,

> The purposes of the safeguards prescribed by Miranda are to ensure that the police do not coerce or trick captive suspects into confessing, to relieve the 'inherently compelling pressures' generated by the custodial setting itself, 'which work to undermine the individual's will to resist,' and as much as possible to free courts from the task of scrutinizing individual cases to try to determine, after the fact, whether particular confessions were voluntary.

Berkemer, 468 U.S. at 433 (internal citations and footnotes omitted). However, the Court also observed that, "cases in which a defendant can make a colorable argument that a self-incriminating statement was 'compelled' despite the fact that the law enforcement authorities adhered to the dictates of Miranda are rare." Id. at n.20. After being advised of his Miranda rights, an accused may himself validly waive his rights by an express statement that he is willing to make a statement. North Carolina v. Butler, 441 U.S. 369, 374 (1979).

After a review of the record, the Court finds that the OCCA's decision was not contrary to, or an unreasonable application of, federal law as determined by the Supreme Court. The entire interview was relatively short, lasting 2 hours, 20 minutes. See Dkt. # 18-13, Tr. Vol. I at 26. The record confirms that, at the beginning of his interview, at approximately 1:25 p.m., Petitioner was advised of his Miranda rights and agreed to speak to the detectives. See id. at 8-10; Dkt. # 18-23 at 62 (State's Ex. 122, Notification of Rights/Waiver signed by Petitioner on 01/08/06 at 1325 hours). Although Petitioner was only seventeen (17) years old, he understood the English language

and affirmatively stated that he was not under the influence of drugs or alcohol and that he understood each of the rights he was waiving.  See Dkt. # 18-13, Tr. Vol. I at 11; Dkt. # 18-23 at 62. Detectives testified they did not begin recording the interview until approximately 3:25 p.m., because that is when they believed they had obtained truthful statements from Petitioner.  See Dkt. # 18-13, Tr. Vol. I at 17-18, 138-140.  As noted by the OCCA, see Dkt. # 16-4 at 2, the detectives offered consistent and reasonable explanations regarding the decision to record only the last twenty (20) minutes of the interview, thereby rebutting Petitioner's claim that the entire interview was not recorded to hide the use of improper tactics.  At the beginning of the recorded confession, Detective Stout reminded Petitioner of his Miranda rights and Petitioner acknowledged that he understood his rights.  See Dkt. # 19, State's Ex. 2, audiotaped recording of Petitioner's confession.  In addition, both Detective Stout and Detective Regalado testified that Petitioner never requested an attorney. See Dkt. # 18-13, Tr. Vol. I at 41, 106.  All three detectives denied using improper tactics, including threats and promises, during Petitioner's interview.  Id. at 23-25, 95-96, 139-40.  The interview concluded at 3:45 p.m.  Id. at 25.  That record supports the trial court's finding that, under the totality of the circumstances, Petitioner's confession was voluntary and admissible.  Petitioner fails to show that the OCCA's decision was contrary to, or an unreasonable application of, federal law as determined by the Supreme Court, 28 U.S.C. § 2254(d).  Habeas corpus relief is denied on Ground I.

## 2. Exclusion of expert testimony (Ground II)

In Ground II, Petitioner claims that the trial court's exclusion of expert testimony on false and coerced confessions deprived him of his right to present his defense. See Dkt. # 12 at 8. The record reflects that, during the Jackson v. Denno hearing, Petitioner presented the testimony of Shawn Roberson, Ph.D., to explain the phenomenon of false confessions and its applicability to the voluntariness of Petitioner's confession. See Dkt. # 18-13, Tr. Vol. I at 170. Dr. Roberson identified three (3) areas of concern contributing to the possibility of a false confession in this case: (1) Petitioner's youth, (2) Petitioner's suggestibility, and (3) Petitioner's disenfranchisement from his family. Id. at 213-14. Dr. Roberson also testified that Petitioner was not incompetent and while mental illness is not a condition precedent for a false confession, Petitioner did not have a major mental illness. Id. at 236, 244, 247. At the conclusion of Dr. Roberson's testimony, the trial judge found that, while Dr. Roberson was an expert in the fields of forensic psychology and false confessions, under OKLA. STAT. tit. 12, § 2702, the information on false confessions had "not developed yet" to the point of giving it credence. Id. at 249-50. The trial judge further stated that "absent a showing of a demonstrable psychological condition or impairment . . . the social science is simply not developed to a point where that decision should be presented to a jury." Id. at 250. For those reasons, the trial judge allowed Dr. Roberson to testify during the Jackson v. Denno hearing, but ruled that the testimony would not be allowed at trial. Id. at 251-52.

On direct appeal, Petitioner challenged the trial judge's ruling and argued that it deprived him of the opportunity to present a meaningful defense. See Dkt. # 16-1 at 22. In denying relief on this claim, the OCCA acknowledged that "[t]here is a split among jurisdictions about the admissibility of expert testimony regarding false confessions, where as in this case, the defendant

has not been diagnosed with a mental disability." <u>See</u> Dkt. # 16-4 at 3. The OCCA noted that "White claimed he did not yield to any of the police tactics and confess until an officer put a gun to his head," and found that "[a]nyone, regardless of youth, suggestibility and isolation, could succumb to that type of threat and confess. Expert testimony is not required to understand why someone would confess falsely with that type of coercion." <u>Id.</u> at 3-4. As a result, the OCCA concluded that "[i]n light of the current case law both from within and outside of Oklahoma and the circumstances of this case, we find that the trial court did not abuse its discretion in prohibiting Dr. Roberson from testifying about false confessions." <u>Id.</u> at 4.

A defendant's right to due process of law under the Fifth Amendment and to compulsory process under the Sixth Amendment includes the right to present witnesses in his or her own defense. <u>See</u> <u>Washington v. Texas</u>, 388 U.S. 14, 18-19 (1967). "The right to offer the testimony of witnesses . . . is in plain terms the right to present a defense. . . . This right is a fundamental element of due process of law." <u>Id.</u> at 19. A violation of the Compulsory Process Clause of the Sixth Amendment occurs when a defendant is arbitrarily deprived of testimony that would have been relevant, material, and vital to his defense. <u>United States v. Valenzuela-Bernal</u>, 458 U.S. 858, 867 (1982). The mere invocation of the right to compulsory process, however, "cannot automatically and invariably outweigh countervailing public interests." <u>Taylor v. Illinois</u>, 484 U.S. 400, 410-16 (1988). The Court explained that:

> The integrity of the adversary process, which depends both on the presentation of reliable evidence and the rejection of unreliable evidence, the interest in the fair and efficient administration of justice, and the potential prejudice to the truth-determining function of the trial process must also weigh in the balance.

<u>Id.</u> at 414-15. In accordance with these principles, courts have recognized that "'the right to present defense witnesses is not absolute. A defendant must abide the rules of evidence and procedure,'

including 'standards of relevance and materiality.'" <u>United States v. Dowlin</u>, 408 F.3d 647, 659 (10th Cir. 2005) (quoting <u>United States v. Bautista</u>, 145 F.3d 1140, 1151-52 (10th Cir. 1998)).

In <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579 (1993), the Supreme Court addressed the admissibility of expert testimony under FED. R. EVID. 702 and held that the expert testimony must be both relevant and reliable. <u>Daubert</u>, 509 U.S. at 597. The OCCA has explicitly adopted the standard set forth in <u>Daubert</u>. <u>See</u> <u>Taylor v. State</u>, 889 P.2d 319, 328 (Okla. Crim. App. 1995). In the instant case, the trial judge relied on OKLA. STAT. tit. 12, § 2702,[5] to exclude Dr. Roberson's testimony.

It is well established that this Court may not grant habeas corpus relief on the basis of state court evidentiary rulings "unless they rendered the trial so fundamentally unfair that a denial of constitutional rights results. Because a fundamental-fairness analysis is not subject to clearly definable legal elements, when engaged in such an endeavor a federal court must tread gingerly and exercise considerable self-restraint." <u>Duckett v. Mullin</u>, 306 F.3d 982, 999 (10th Cir. 2002) (internal quotation marks and citations omitted). In this case, Petitioner fails to demonstrate that the

---

[5]Oklahoma's evidentiary rule governing admission of expert testimony provides as follows:

If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify in the form of an opinion or otherwise, if:

1. The testimony is based upon sufficient facts or data;

2. The testimony is the product of reliable principles and methods; and

3. The witness has applied the principles and methods reliably to the facts of the case.

OKLA. STAT. tit. 12, § 2702.

exclusion of Dr. Roberson's testimony at trial violated standards of relevance and materiality set forth in the rules of evidence. Furthermore, the Court finds that the trial court's ruling did not interfere with Petitioner's ability to present his defense in violation of his constitutional rights to due process or to compulsory process. Through strenuous cross-examinations, defense counsel exposed inconsistencies in the testimony of Crawford, McClendon, and the detectives who interviewed Petitioner on January 8, 2006. As a result, the witnesses' credibility was placed squarely before the jury. In addition, during closing argument, defense counsel continued to attack the witnesses' credibility, see, e.g., Dkt. # 18-21, Tr. Vol. IX at 1640-41, 1649-51, and presented arguments supporting the defense theory that Petitioner "is not who killed this woman," id. at 1637. Therefore, Petitioner fails to demonstrate that the OCCA's adjudication of this claim was contrary to, or an unreasonable application of, federal law as determined by the Supreme Court. 28 U.S.C. § 2254(d). For that reason, habeas corpus relief is denied on Ground II.

### 3.      Evidentiary rulings (Grounds III and IV)

In Ground III, Petitioner claims he was denied a fundamentally fair trial because the trial judge excluded the testimony of his uncle, Dana Terrill White. See Dkt. # 12 at 11. During trial, the judge held a hearing, outside the presence of the jury, to determine the admissibility of Crawford's alleged confession, that he had killed Ramirez, made to Dana White, uncle of both Petitioner and Crawford. See Dkt. # 18-19, Tr. Vol. VII at 1110-1146. The State objected to admission of the Dana White's testimony based on both surprise and violation of OKLA. STAT. tit. 22, § 2002(B). Id. at 1110. After hearing Dana White's testimony, the trial court ruled that if Crawford testified, defense counsel would be allowed to cross-examine on the issue of his purported confession to Dana White, and if Crawford denied making the statement, then Petitioner would be

allowed to call Dana White.  Id. at 1146. However, after Crawford testified and denied making the confession, the trial judge revisited his prior ruling and decided to exclude the testimony of Dana White as highly prejudicial to the State.  See Dkt. # 18-21, Tr. Vol. IX at 1451.

On direct appeal, Petitioner argued that the trial judge's ruling was erroneous because the confession was admissible both as impeachment evidence and as exculpatory evidence of an alternate suspect.  See Dkt. # 16-1 at 36.  The OCCA found that "[g]iven the importance of Crawford as a State's witness and the importance of impeaching Crawford with White's theory that Crawford was the real killer, it was error to exclude evidence supporting White's defense under [OKLA. STAT. tit. 12,] § 2403."  See Dkt. # 16-4 at 5.  However, after examining the evidence, the OCCA concluded that "[i]n light of the other evidence connecting Appellant White to the murder, we find that the erroneous exclusion of Dana White's testimony for impeachment or any other purpose was harmless beyond a reasonable doubt."  Id. at 6.

In Ground IV, Petitioner alleges that he was denied a fair trial and due process because McClendon's audiotaped statement to police was improperly admitted.  See Dkt. # 12 at 13.  At trial, the State argued that the audiotaped recording of McClendon's January 8, 2006, interview with detectives was admissible as a prior consistent statement.  See Dkt. # 18-19, Tr. Vol. VII at 1293. Specifically, the State argued that defense counsel had implied, through cross-examination, that at a subsequent meeting with McClendon, in June 2007, the State pressured McClendon to "somehow bolster or add to the story that he told to the police."  Id.  The trial judge agreed, finding that "the State has met the foundational requirements" for admission of the audiotape.  See Dkt. # 18-20, Tr. Vol. VIII at 1302.

On direct appeal, Petitioner argued that the trial judge erred in admitting the alleged prior consistent statement and that the hearsay evidence improperly bolstered McClendon's trial testimony. See Dkt. # 16-1 at 46. The OCCA agreed with Petitioner that the statement was erroneously admitted, finding that:

> The trial court erred in admitting State's Exhibit 101, a tape recording of Jhirimi McClendon's January 2006 interrogation, as a prior consistent statement under 12 O.S. Supp.2002, § 2801 (B)(1)(b), because the State failed to prove that the consistent statement was made prior to the time the witness was unduly influenced or had a motive to lie.

See Dkt. # 16-4 at 6 (citation omitted). However, after reviewing the evidence presented at Petitioner's trial, the OCCA again found that "[g]iven the totality of the evidence presented, we have no grave doubt that the outcome of the trial would have been materially affected had the error not occurred." Id. at 7.

"[F]ederal habeas corpus relief does not lie for errors of state law." Estelle v. McGuire, 502 U.S. 62, 67 (1991) (quotations and citations omitted). "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Id. at 68. State court evidentiary rulings, such as those alleged by Petitioner, do not warrant habeas relief unless the ruling rendered the "trial so fundamentally unfair as to constitute a denial of federal constitutional rights." Jackson v. Shanks, 143 F.3d 1313, 1322 (10th Cir. 1998); Martin v. Kaiser, 907 F.2d 931, 934 (10th Cir. 1990) (due process claim related to admission of evidence at state trial will not support habeas relief "absent fundamental unfairness so as to constitute a denial of due process of law"). The appropriate harmless error standard to be applied on habeas review is from Brecht v. Abrahamson, 507 U.S. 619, 638 (1993). See Fry v. Pliler, 551 U.S. 112, 121-22 (2007); Herrera v. Lemaster, 301 F.3d 1192, 1199 (10th Cir. 2002). The standard "requires reversal only if [the error] had substantial and injurious effect or influence in determining the jury's verdict."

Brecht, 507 U.S. at 631 (quotation omitted). "[E]rrors which do not contribute to the verdict should not be reversed unless their effect is fundamentally unfair." United States v. Turrietta, 696 F.3d 972, 984 (10th Cir. 2012) (citing Rose v. Clark, 478 U.S. 570, 579 (1986)). Thus, Petitioner's burden is to show that the trial court's erroneous evidentiary rulings had a substantial and injurious effect in the determination of the jury's verdict.

After reviewing the transcripts and the trial court record, the Court finds that the OCCA's findings that the erroneous evidentiary rulings were harmless is not contrary to federal law as interpreted by the Supreme Court. As to the exclusion of Dana White's testimony, given the strength of properly admitted evidence, the trial court's erroneous evidentiary ruling did not have a substantial and injurious effect in the determination of the jury's verdict. As discussed above, Petitioner confessed and his audiotaped confession was properly admitted. See Dkt. # 19. In addition, evidence recovered from Petitioner's apartment, including a cannister of mace, a pair of black and red gloves, two BB guns, a hammer, and a pair of black shoes belonging to Petitioner, see Dkt. # 18-20, Tr. Vol. VIII at 1330-40, matched crime scene evidence, other witnesses' testimony, and Petitioner's confession, and demonstrated Petitioner's role in the murder. Significantly, the soles of the shoes recovered from Petitioner's apartment matched the majority of the footprints found on the sandy ledge near Ramirez's body. See Dkt. # 18-21, Tr. Vol. IX at 1551. A few of the footprints matched the soles of McClendon's shoes. None of the footprints matched Crawford's shoes. Furthermore, no inculpatory evidence was recovered from Crawford's apartment. Id. In addition, cellular phone records supported Crawford's testimony that he received calls from the victim's cell phone during the early evening hours of January 6, 2006. See id. at 1455.

As to the admission of McClendon's audiotaped statement, the Court finds that the trial court's erroneous evidentiary ruling did not have a substantial and injurious effect in the

determination of the jury's verdict. First, the audiotaped statement was consistent with McClendon's trial testimony. In addition, as noted by the OCCA, "the jury was free to consider any influence exerted by the State to obtain McClendon's cooperation," see Dkt. # 16-4 at 6-7, including McClendon's testimony that he felt pressured during his interview on January 8, 2006, that he was in the interview room for seven (7) hours, and that the police threatened "to blow the back of my head out if I moved" while using the restroom. See Dkt. # 18-19, Tr. Vol VII at 1277, 1281, 1287.

In summary, after review of the trial record, the Court finds that Petitioner has not demonstrated that the erroneous evidentiary rulings had a substantial and injurious effect or influence in determining the jury's verdict. Petitioner has not shown that the OCCA's adjudication of these claims was contrary to, or an unreasonable application of, federal law as determined by the Supreme Court. 28 U.S.C. § 2254(d). Habeas corpus relief is denied on Grounds III and IV.

### 4.    Cumulative error (Ground V)

In Ground V, Petitioner argues that cumulative error deprived him of a fundamentally fair trial. See Dkt. # 12 at 15. On direct appeal, the OCCA denied relief on this claim, citing DeRosa v. State, 89 P.3d 1124, 1157 (Okla. Crim. App. 2004), and finding that "[c]umulative error did not deprive White of a fair trial." See Dkt. # 16-4 at 7.

In analyzing a cumulative error claim, the proper inquiry "aggregates all the errors that individually might be harmless [and therefore insufficient to require reversal], and it analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless." United States v. Wood, 207 F.3d 1222, 1237 (10th Cir. 2000) (quotation omitted). The Tenth Circuit Court of Appeals has repeatedly held that cumulative error analysis is applicable only where there are two or more actual errors. Workman v. Mullin, 342 F.3d

1100, 1116 (10th Cir. 2003). Cumulative impact of non-errors is not part of the analysis. Le v. Mullin, 311 F.3d 1002, 1023 (10th Cir. 2002) (citing Rivera, 900 F.2d at 1471). "In the federal habeas context, the only otherwise harmless errors that can be aggregated are federal constitutional errors, and such errors will suffice to permit relief under cumulative error doctrine only when the constitutional errors committed in the state court trial so fatally infected the trial that they violated the trial's fundamental fairness." Matthews v. Workman, 577 F.3d 1175, 1195 n.10 (10th Cir. 2009) (internal quotation omitted). "[T]he task 'merely' consists of 'aggregat[ing] all the errors that have been found to be harmless' and 'analyz[ing] whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless.'" Grant v. Trammell, 727 F.3d 1006, 1025 (10th Cir. 2013) (quoting Rivera, 900 F.2d at 1470). "Only if the errors 'so fatally infected the trial that they violated the trial's fundamental fairness' is reversal appropriate." Id. (quoting Matthews, 577 F.3d at 1195 n.10). "[A]ll a defendant needs to show is a strong likelihood that the several errors in his case, when considered additively, prejudiced him." Id. at 1026.

In this case, the Court determined above that evidentiary rulings by the trial court, as argued in Grounds III and IV, did not individually render Petitioner's trial fundamentally unfair. No other errors were found. In light of the evidence presented in this case, Petitioner has not shown "a strong likelihood that the several errors in his case, when considered additively, prejudiced him." Grant, 727 F.3d at 1026; see also Matthews, 577 F.3d at 1195 n.10. For that reason, Petitioner is not entitled to habeas corpus relief on Ground V.

## C.      Certificate of appealability

Rule 11, Rules Governing Section 2254 Cases in the United States District Courts, instructs that "[t]he district court must issue or deny a certificate of appealability when it enters a final order

adverse to the applicant." Pursuant to 28 U.S.C. § 2253, the court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," and the court "indicates which specific issue or issues satisfy [that] showing." A petitioner can satisfy that standard by demonstrating that the issues raised are debatable among jurists, that a court could resolve the issues differently, or that the questions deserve further proceedings. Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (citing Barefoot v. Estelle, 463 U.S. 880, 893 (1983)).

In this case, the Court concludes that a certificate of appealability should not issue. Nothing suggests that the Tenth Circuit would find that this Court's application of AEDPA standards to the decision by the OCCA is debatable among jurists of reason. See Dockins, 374 F.3d at 938. The record is devoid of any authority suggesting that the Tenth Circuit Court of Appeals would resolve the issues in this case differently. A certificate of appealability shall be denied.

### CONCLUSION

After careful review of the record, the Court concludes that Petitioner has not established that he is in custody in violation of the Constitution or laws of the United States. Therefore, his petition for writ of habeas corpus shall be denied.


**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1.     The clerk shall note on the record the substitution of Robert Patton, Director, in place of David C. Miller, Warden, as party respondent.

2.     The amended petition for writ of habeas corpus (Dkt. # 12) is **denied**.

3.     The original petition for writ of habeas corpus (Dkt. # 1) is **declared moot**.

4.     A certificate of appealability is **denied**.

5.     A separate judgment shall be entered in this matter.

**DATED** this 26th day of August, 2014.

GREGORY K. FRIZZELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT